(65 App. Div. 306.)

PEOPLE v. MERCANTILE CREDIT GUARANTEE CO. OF NEW YORK.

In re WEIL et al.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

CORPORATIONS—DISSOLUTION—JUDGMENT OF FOREIGN COURT.

A judgment rendered in Illinois against a New York corporation in an action during the pendency of which the corporation is dissolved, is void in New York, though by the statute of Illinois (abatement act) such judgment is valid in that state so far as persons and property situated therein are concerned.

Appeal from special term, New York county.

Proceedings for the dissolution of a corporation by the people against the Mercantile Credit Guarantee Company of New York. From an order confirming the report of a referee denying the claim of Weil Bros. & Co., claimants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Horace A. Davis, for appellants.
David Rumsey, for respondent.

INGRAHAM, J. The determination of the question here presented depends upon the effect that the courts of this state are bound to give to a judgment of a sister state rendered against a defendant, a domestic corporation organized under the laws of this state, after it has been dissolved. The Mercantile Credit Guarantee Company of New York, a corporation formed under the laws of this state, was dissolved by a final judgment of the supreme court entered on August 5, 1897. At the time of the dissolution of this corporation there was pending in the circuit court of Cook county, in the state of Illinois, a court of record of general common-law jurisdiction, an action in which Abraham Weil and Isaac Weil, copartners under the firm name of Weil Bros. & Co., were plaintiffs and the Mercantile Credit Guarantee Company of New York was defendant, to recover damages in the amount of $12,000. That action seems to have been commenced by the service of a writ issued out of the court upon the agent of the company on the 29th day of May, 1895, and on the 16th day of July, 1895, the defendant duly appeared and answered. No further proceedings seem to have been taken in such action until after the dissolution of the defendant corporation, when the attorneys who had appeared for the defendant served a notice upon the receiver appointed by the supreme court of this state that on the 30th of October, 1897, they would ask leave to withdraw

their appearance as attorneys for the defendant in the action, at which time and place the receiver could appear, if he should see fit; and on the 7th of October, 1897, it was ordered by the court in which the action was pending that "leave be, and the same is hereby, given them to withdraw their appearance as attorneys for said defendant." Subsequently, and on the 12th of October, 1897, the case was called for trial upon the pleadings. A jury was impaneled, and found a verdict for the plaintiffs, assessing the plaintiffs' damages at $9,867.87, and judgment was entered in favor of the plaintiffs against the Mercantile Credit Guarantee Company of New York for the amount of such verdict and costs. Subsequent to the entry of this judgment, the plaintiffs presented to the receiver a claim against the corporation, and a referee was appointed by the supreme court to hear and determine the claims presented. To support the claim presented by the plaintiffs in the action above referred to, counsel for the claimants introduced in evidence certain provisions of the Revised Statutes of Illinois, and called as a witness a member of the bar of that state, and asked the following hypothetical question regarding the law of Illinois: "A case is begun in the circuit court of Cook county by a policy holder against the Mercantile Credit Guarantee Company on a policy of insurance. After the appearance of the defendant in the suit by an attorney, and while the case is pending, the defendant, which is a foreign corporation, is dissolved by decree of court of the state of its incorporation, and a receiver of its property is appointed. The Illinois action proceeds to judgment in favor of plaintiff and against the defendant on defendant's default at the trial, and without the receiver having appeared. What force and effect is given to such judgment in Illinois?" The witness answered, "I think the force and effect of a valid judgment is given to such judgment;" and the reason given for that conclusion was that the abatement act, which has been introduced in evidence, provides that an action against a corporation is not abated by the dissolution of such corporation pending the action, unless the dissolution is pleaded in the case, and that such a judgment is conclusive evidence against the defendant of the existence of a debt. The exemplified record of the judgment was then offered to the witness, who testified that he thought it was a valid judgment in Illinois under the law of that state. On cross-examination the witness was asked whether there was any reported case in Illinois which holds that the judgment is good against the property of a corporation after the corporation has been dissolved, the judgment being rendered after the corporation was dissolved. The witness answered: "No, sir; I know of no decision. There is an intimation—a dicta—in the Illinois courts to that effect." It further appeared that the receiver was appointed, and the judgment dissolving the corporation entered, in the supreme court of this state on the 5th day of August, 1897; that the judgment in Illinois was entered October 7, 1897; and that there was no process against nor appearance for the receiver in the action in which the judgment was entered. Upon this evidence the claimants rested, and the referee dismissed the claim upon the ground that the judgment en-

tered in the state of Illinois, after the dissolution of the corporation and the withdrawal of the appearance of the attorneys who had appeared for the corporation in the action, was not binding upon the receiver, and was no evidence of the existence of the indebtedness of the corporation as against the receiver; and from the report of the referee, which was confirmed by the special term, the claimants appeal.

The question of the effect of this judgment must depend upon the jurisdiction that the Illinois court had over the corporation after its dissolution to render a judgment against it which is binding in this state. It is quite clear that the court of Illinois obtained jurisdiction over the defendant corporation by its appearance in the action in the state of Illinois, and that, had the judgment been entered prior to the dissolution of the corporation, no question could have been presented as to its binding effect as establishing the claim sued on in that action. There can also, I think, be no question but that upon the dissolution of a corporation, as upon the death of a natural person, the jurisdiction of any court over such a corporation ends. As was said by Judge Danforth in People v. Knickerbocker Life Ins. Co., 106 N. Y. 623, 13 N. E. 448:

"As for the defendant of record, its dissolution put an end to the action; and at the time of the rendition of the judgment it had neither legal existence, capacity to be sued, nor any property against which a judgment could be enforced."

There was, in effect, no defendant; the debtor had ceased to exist; its property had passed to others; its power of defending a suit or of doing any act was at an end; authority to attorneys and agents to act for it was revoked; and any judgment which purported to be against such a dissolved corporation, entered after its dissolution, was not a judgment against that corporation, because, when the judgment was sought to be entered, no such corporation existed. Whatever effect the law of the state in which an action against a corporation was pending would give to such a judgment as against the property of a corporation thus dissolved in that state would be a matter which would relate simply to the enforcement of claims of creditors against the property of a dissolved corporation, and could have no extraterritorial effect. The question as to the effect of a judgment which, by a court of competent jurisdiction, has been entered nunc pro tunc as of a date preceding the dissolution of a corporation or the death of a natural person, where the liability of the defendant had been determined by a verdict or decision prior to his death, it is not necessary to determine, as such a condition does not here exist. There was no attempt by the court of Illinois to enter a judgment nunc pro tunc as of a date prior to the dissolution of this corporation. In this case the determination of the validity of the plaintiffs' demand against the corporation took place after the dissolution of the corporation, and the judgment was entered as of the date of that determination. That a judgment entered on a verdict rendered after the dissolution of a corporation has no force out of the jurisdiction in which it was rendered seems

to me to be established by the uniform course of authorities; certainly in the courts of this state and in the supreme court of the United States.

The case of People v. Knickerbocker Life Ins. Co., supra, was before the general term of the supreme court. 43 Hun, 574. The referee in that case had disallowed a claim presented to the receiver of the defendant, and by the general term his action was reversed. It appeared that the claimant had obtained a judgment against the corporation in the circuit court of the United States for the Western district of Tennessee; that subsequently that case was removed to the supreme court of the United States by writ of error; that before it came on for hearing in the supreme court of the United States the corporation was dissolved, and a receiver appointed; that the receiver conducted the case in the supreme court of the United States, employed counsel to argue it there, and the judgment was reversed. Subsequently, upon a new trial, the receiver did not appear, and the plaintiff in the original action again obtained a judgment. The general term of the supreme court held that the receiver had made himself a party to the proceeding by taking charge of the writ of error in the supreme court of the United States and employing counsel to appear and argue the case there, and that he could not, by subsequently abandoning the action, prevent the plaintiffs from bringing it to trial, and obtaining a judgment entitling them to participate in the distribution of the assets of the corporation. Upon appeal to the court of appeals this decision was reversed (106 N. Y. 623, 13 N. E. 448), and the court held that the receiver had not been made a party to the action in which the judgment was recovered, and that the funds in his hands could not be affected by it, unless, by inference or otherwise, under the direction of the court appointing him, he had made himself responsible for the final result of the litigation between the parties; that the subsequent trial and judgment had nothing to do with the writ of error; that as to the cause of action the receiver had not been heard, nor had he the right or opportunity to be heard respecting it; that the object of the writ of error was solely to protect the property in his hands from an incumbrance; that with the proceedings upon the writ of error the court in Tennessee had nothing to do; that the receiver committed no act within its jurisdiction, nor was the property which he sought to protect ever under its control; that it at no time acquired jurisdiction over him, nor over the funds sought to be reached by force of its adjudication; and that there was no ground upon which the case could be made an exception to the general rule that a person is not estopped by a judgment to which he is not a party.

The question here presented was before the court of appeals in Rodgers v. Insurance Co., 148 N. Y. 34, 42 N. E. 515. It appeared that an action by the claimant against a dissolved corporation was pending in the state of Illinois at the time of the dissolution of the corporation. Subsequent to the dissolution of the corporation the court rendered judgment against the defendant. It was claimed there, as here, that such a judgment was conclusive upon an application to distribute the assets of the dissolved corporation; but that

claim was disallowed by the supreme court. Upon appeal to the court of appeals counsel for the appellant called the attention of the court to the law of Illinois which was presented to the referee in this case, and claimed that the Illinois court was authorized to enter judgment against a corporation after dissolution, and that, if the judgment was regular and valid under the Illinois statutes, it was valid under the law of the state of New York; that the judgment was in fact, though not in form, a judgment against the fund in the hands of the receiver and against the receiver as its custodian. But the court affirmed the action of the supreme court, and disallowed the claim. It said:

"Under our law it is perfectly well settled that there can be no valid judgment against a dissolved corporation, unless one founded on a pending suit, which the order of dissolution itself preserves from abatement, or in some manner saved. That, concededly, was the common-law rule, outside of statutory modifications; but the contention now is that the statutes of Illinois have established a different doctrine, and made possible a valid judgment against a corporation, which thereafter other states, on principles of comity and under the constitution, are bound to treat as good and effectual. Two statutes of Illinois are cited for that purpose. One of them continues a dissolved insurance corporation for two years for the purpose of winding up its affairs and prosecuting suits by and against it; another contains a similar provision relating to corporations generally. Undoubtedly, these statutes operated upon foreign corporations doing business in Illinois, so far, at least, as their property within its boundaries was concerned, and the consequent judgments became valid and enforceable for that purpose and to that extent. Such, only, is the effect claimed for the statutes by the courts of the sister state. They do not undertake to give them an extraterritorial obligation, but treat the foreign corporation, though civilly dead, as de facto alive for the purposes of a remedy within their own limits. That the foreign corporation, dissolved and dead in the domicile of its origin, should be deemed alive in the foreign state so far as to save the remedies of its own citizens against property within its own jurisdiction, is entirely possible, and not at all unreasonable. But to go further than that, and insist that by force of the foreign judgment, and through the comity of the states, the corporation, in its own jurisdiction, is at the same moment dead and alive,—dead as to our citizens, but alive as to foreign creditors,—is to throw the whole system into confusion, and make a complete dissolution and winding up impossible."

And this principle has received the approval of the supreme court of the United States in Pendleton v. Russell, 144 U. S. 640, 12 Sup. Ct. 743, 36 L. Ed. 574, where it was expressly held that a judgment against a corporation dissolved before the judgment is entered was invalid, and could be the basis of no relief in any state other than that in which the judgment had been entered, which but applied the principle established in Pennoyer v. Neff, 95 U. S. 730, 24 L. Ed. 571, where it is said:

"In all cases brought in the state and federal courts, where attempts have been made under the act of congress to give effect in one state to personal judgments rendered in another state against nonresidents without service upon them, or upon substituted service by publication, or in some other form, it has been held without an exception, so far as we are aware, that such judgments were without any binding force, except as to property or interests in property within the state, to reach and affect which was the object of the action in which the judgment was rendered, and which property was brought under control of the court in connection with the process against the person."

It is here established that the defendant against whom, upon its face, this judgment purports to have been rendered had been dissolved, and thus ceased to be a corporation or an existing person before the judgment was obtained. From the nature of things, the court, upon the dissolution of the corporation, lost jurisdiction over its person. It could have no jurisdiction over a person that had ceased to exist, and neither the acts of the legislature nor the action of the court could confer a jurisdiction which, by the dissolution of the corporation, had been rendered impossible. No act of the legislature of the state of Illinois could give its courts jurisdiction over the person of a nonresident not served with process within the state. No action of a court of the state of Illinois could give it jurisdiction over a nonresident, who was not within its jurisdiction, had not been served with its process, or who had not appeared in the proceeding. Nor could any authority or consent given by a corporation survive its extinction by the judgment of dissolution. It was entirely competent for the state of Illinois to direct that a judgment be entered in form against a dissolved corporation, although its courts had lost jurisdiction over it by its dissolution, and to direct that such a judgment should affect property which had belonged to the corporation located within the state. With such exercise of power no other state has any concern; but it is entirely incompetent for the state of Illinois to say that a judgment that its court shall enter against a nonexisting corporation or individual who is not before the court, over whom it has and can obtain no jurisdiction, shall be conclusive evidence as against persons not parties to the record, in other states, and shall affect property which has ceased to be the property of the judgment debtor. We give full faith and credit to this judgment when we hold that it was valid in the state of Illinois, and affects property and persons within the jurisdiction of that state. That was the effect that the law of the state of Illinois gave to such a judgment, and all that the courts of this state are required to give to it.

The order appealed from is right, and should be affirmed, with costs. All concur.